UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| PAMELA JEAN BRANDT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 19-042-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW M. SAUL, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Commissioner of Social Security ("Commissioner") denied Plaintiff Pamela Jean Brandt's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Brandt appealed the Commissioner's decision to this Court, and the parties have now filed cross-motions for summary judgment. [Record Nos. 11, 13]

Brandt contends that the Commissioner's decision should be reversed because the Administrative Law Judge ("ALJ") assigned to her case did not follow the applicable law in deciding whether she was entitled to benefits. Conversely, the Commissioner maintains that the decision should be affirmed because the ALJ applied the law correctly and the decision denying benefits is supported by substantial evidence. For the reasons that follow, the Commissioner's motion will be granted and Brandt's motion will be denied.

I. **Procedural History**

Brandt filed an application for Disability Insurance Benefits ("DIB") under Title II of the Act on January 25, 2016. [*See* Administrative Transcript, hereinafter "Tr.," 108, 306.] Brandt requested an administrative hearing before an ALJ after her application was denied

initially and on reconsideration. [Tr. 237, 248, 256] She appeared before ALJ Karen Jackson in Lexington, Kentucky in January 2018. [Tr. 153-204] Following this hearing, Jackson denied benefits in a written decision dated May 7, 2018. [Tr. 105-23] The Appeals Council affirmed the decision in December 2018, making this matter is ripe for review under 42 U.S.C. § 405(g). [Tr. 1-4]

## II. Background

Brandt was 54 years old at the time of the ALJ's decision. She reported that she became unable to work on August 17, 2015, due to neck pain, migraines, and stress following the death of her 29-year-old son in 2014. [Tr. 324, 958] Brandt resided with her 86-year-old mother, who she assisted with some activities of daily living. [Tr. 180, 351] She also helped care for her three young grandchildren, but reported that she was forced to terminate that assistance in late 2017 because she "couldn't handle it anymore." [Tr. 182]

Brandt advised ALJ Jackson that she had a driver's license, but occasionally had trouble driving due to migraines and seizures. [Tr. 158] She was able to do some household cleaning and prepare some meals. She reported going grocery shopping twice per month, and enjoyed watching television several times per day. [Tr. 350] Brandt socialized with her adult daughter, as well as a friend who she saw once or twice a month. [Tr. 354]

Brandt has an associate degree in business administration, with an emphasis in medical billing and coding. [Tr. 158] From January 2012 through September 2015, she performed administrative work in which she was required to lift up to 20 pounds. [Tr. 159-60] And prior to this employment, she worked in healthcare billing, at a call center, and at L-3 Communications, where she was required to lift up to 80 pounds. [Tr. 161-64]

Brandt's primary care provider, Usha Gutti, M.D., treated her for neck and back pain, fibromyalgia, headaches, depression, anxiety, and seizures. Gutti prescribed various medications for these problems, including Baclofen, Neurontin, Norco, Topamax, Savella, Restoril, trazadone, and ibuprofen. [Tr. 635] Gutti referred Brandt to neurosurgeon Gabriel Phillips, M.D, for neck and low back pain in March 2016. Phillips noted that, while Brandt reported tenderness upon palpation of her cervical and lumbar spine, objective testing such as straight leg raising and reflexes was normal. A lumbar MRI revealed a broad based disc protrusion at L5-S1, with mild bilateral foraminal stenosis. Phillips described the results of the MRI as "unremarkable." [Tr. 625] Phillips instructed Brandt to continue physical therapy. [Tr. 628-29]

Brandt underwent a successful cervical fusion at the C5-6 level in 2006, but complained that her pain had progressively returned. [Tr. 680] Gutti referred Brandt to a second neurosurgeon, C. Benjamin Newman, M.D, in July 2016. [Tr. 677] Newman remarked that Brandt had fibromyalgia and that there was "no clear MRI correlate to her pain syndrome." [Tr. 679] He also reported that Cymbalta was helping to relieve Brandt's pain and that surgery was not indicated. A neck x-ray taken in January 2018 revealed some degenerative changes including mild narrowing of the C4-5 and C6-7 disc spaces. [Tr. 1455]

Dr. Gutti referred Brandt to Donald Douglas, M.D., of Advanced Pain Medicine in September 2016. [Tr. 837] Douglas educated Brandt regarding positive lifestyle changes and scheduled therapeutic injections for her neck and low back pain. For unknown reasons, Gutti referred Brandt to a different pain management specialist, Joshua Bailey, M.D., in October 2016. [Tr. 893] Bailey noted Brandt's complaints of pain "all over" and that previous physical therapy and chiropractic treatment had not provided significant relief. Bailey observed that

Brandt's gait was non-antalgic and that her extremity and trunk range of motion was normal. He diagnosed her with fibromyalgia and SI joint dysfunction, provided an injection to the SI joint, and recommended that she wean from opiate use. [Tr. 898, 903]

Brandt saw neurologist Aleksandr Mogilevski, M.D., for neck pain and headaches in March 2017. [Tr. 690] Mogilevski noted that Brandt's lateral neck motion was restricted by diffuse muscle spasms "with tenderness from both occipital nerves." [Tr. 691] He referred brandt back to Dr. Douglas for a possible occipital nerve block. [Tr. 692]

Brandt returned to Douglas in May 2017, complaining of constant head pain that interfered with daily activities, including her ability to sleep. [Tr. 1030] Douglas noted that Brandt's neck range of motion was adequate, but that she reported muscle tenderness upon palpation. [Tr. 1032-33] Douglas provided therapeutic injections to Brandt's neck and upper back and remarked that "a workup for counseling [was] in order." [Tr. 1034, 1037]

Mogilevksi referred Brandt to neurophysiologist Toufic Fakhoury, M.D, for an alleged seizure disorder in June 2017. [Tr. 975] Brandt advised Fakhoury that she experienced recurrent "spells" in which she would "zone out" and become unresponsive. Fakhoury admitted Brandt to a hospital for three days during which he performed testing to determine the cause of the alleged episodes. [Tr. 976] Brandt experienced one "spell" during the three days of testing, during which a concomitant EEG showed no change. At some point during testing, there was an indication of focal cerebral dysfunction in the temporal region. However, Fakhoury concluded that Brandt's spells likely were caused by anxiety or PTSD. Fakhoury advised Brandt to avoid driving and to follow up with Dr. Mogilevksi in six to eight weeks. [Tr. 977]

Brandt established care with Nikola Mihaylov, M.D., in September 2017, as a new primary care provider. At that time, Brandt complained of depression, a seizure disorder, and diffuse body pain. [Tr. 1450] Mihaylov noted that Brandt's "polypharmacy [was] difficult to comprehend as many of [the] medications interact and cause significant problems with fatigue, paresthesias, dizziness, etc." Mihaylov discussed this with Brandt, but she was "very defensive about the medication she [was] taking." Mihaylov discontinued several medications and advised Brandt to consider decreasing the amount of medicine she was ingesting "through slow titration." [Tr. 1451-53]

Dr. Mihaylov referred Brandt to Ziad Sara, M.D., of Bluegrass Renal Care, in November 2017. [Tr. 1090] Brandt apparently required renal care based on abnormal lab results, but she denied any uremic symptoms. Sara concluded that Brandt had stage III chronic kidney disease due to excessive use of analgesics. He noted that Brandt's renal function had improved since prior lab work, but he counseled her to avoid using NSAIDs. Sara encouraged "routine health surveillance" and directed her to return to him in four months. [Tr. 1092]

Dr. Mogilevski provided a medical source statement on October 16, 2017. The checklist-style form indicated that Brandt suffered "complex partial seizures" several times per week, despite her excellent compliance with treatment. [Tr. 1086] Mogilevski further reported that Brandt experienced no significant side effects from medication and that she was "unable to work." [Tr. 1087] The ALJ gave Mogilevski's opinion "little weight" because she concluded that it was not supported by the record.

Brandt experienced anxiety and depression following her son's death in October 2014. She began psychotherapy with Melinda Moore, Ph.D., in April 2015. [Tr. 662] Moore diagnosed acute PTSD and moderate, recurrent major depressive disorder. Counseling

- 5 -

sessions included psychoeducation regarding suicide, processing grief, and sleep hygiene. [Tr. 664] By June 2015, Brandt appeared less dysphoric, but was still fatigued and depressed, with a low mood. [Tr. 669] Brandt decided to discontinue therapy after her fourteenth session on August 27, 2015. [Tr. 675]

Brandt resumed psychotherapy with Cheryl Elam, LMFT, in June 2016. [Tr. 943] Elam diagnosed Brandt with severe major depressive order (single episode) and generalized anxiety disorder. [Tr. 944] Treatment included grieving and coping strategies. Elam noted that Brandt was progressing, but it appears that she abruptly stopped attending sessions in July 2016.

Alexander Kuhl, M.S., performed a psychological evaluation at the request of Brandt's attorney on October 2, 2017. [Tr. 956] Brandt reported feeling overwhelmed by financial problems as a result of becoming unemployed in 2015. She reported experiencing memory problems related to stress and stated that she spent most of her time caring for her aging mother and grandchildren. [Tr. 956-57] Kuhl interviewed Brandt extensively and administered a battery of psychological and cognitive tests. [Tr. 964-65]

Kuhl determined that Brandt had longstanding psychological problems, which intensified following her son's death. [Tr. 967] Psychological testing indicated that she was overreporting her symptoms, which Kuhl characterized as a "cry out for help." [Tr. 966] He also believed that she might have a substance abuse disorder based on her history of polysubstance abuse, i.e., combining Norco and Xanax with alcohol. [Tr. 967]

Ultimately, Kuhl determined that Brandt had moderate limitations with respect to understanding, remembering, and carrying out short instructions. He believed that her ability to understand and remember detailed instructions, and to make judgments on simple work-

related decisions was markedly limited. Kuhl also concluded that Brandt's ability to carry out detailed instructions was extremely limited. [Tr. 968]

Kuhl also made recommendations concerning Brandt's ability to interact with others. Specifically, he determined that her ability to interact with the public was moderately limited and that her ability to interact with supervisors and co-workers was markedly limited. He also thought her ability to respond to work pressures in a usual work setting was extremely limited. [Tr. 969] Kuhl concluded that Brandt should work in a structured environment, with simple guided instructions, which would "increase [her] feelings of self-efficacy and serve as [a] healthy buffer to distract her from her symptoms without compromising efforts to continue seeking treatment." [Tr. 970] The ALJ gave Kuhl's opinion little weight because she found it to be overly restrictive and inconsistent with the record and Brandt's lifestyle.

After considering all of the evidence, the ALJ concluded that Brandt suffered from the following severe impairments: degenerative disc disease/disc bulges/stenosis of the cervical spine with history of cervical discectomy/fusion; disc protrusion of the lumbar spine; fibromyalgia; obesity; psychogenic seizures; post-traumatic stress disorder ("PTSD"), and a major depressive order. The ALJ concluded, however, that none of the impairments (or combination of them) met or equaled a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that Brandt could perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, she found that Brandt had the residual functional capacity ("RFC") to

> lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour day; and sit 6 hours in an 8-hour day. She can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, and crawl, and frequently reach overhead with the bilateral upper extremities. She should avoid concentrated

exposure to noise (moderate noise intensity level) and vibration, and even moderate exposure to hazards such as unprotected heights or dangerous machinery. She is limited to simple routine work tasks and can maintain concentration for 2-hour segments during an 8-hour workday, adapt to gradual changes in a routine work environment, and interact frequently with supervisors and coworkers, with occasional interaction with the general public.

Considering this RFC along with Brandt's age, education, and work experience, a vocational expert testified that there were a substantial number of jobs in the national economy that Brandt could perform. [Tr. 197] Accordingly, the ALJ determined that Brandt was not disabled as defined by the Act.

### III. Standard of Review

"Disability" is defined under the Act as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (citing 20 C.F.R. § 1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at

least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(a)(4)(iv). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

# IV.

## A. The ALJ Did Not Err in Determining Brandt's Severe Impairments.

Brandt contends that the ALJ erred by failing to conclude that chronic renal failure, bilateral carpal tunnel syndrome, and migraines were severe impairments. However, when an ALJ determines that the claimant has one or more severe impairments, he or she "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Fisk v. Astrue*, 53 F. App'x 580 (6th Cir. 2007). Accordingly, when an ALJ considers all of the claimant's impairments in the remaining steps of the disability determination, failure to find additional severe impairments at step two "does not constitute reversible error." *Id.* (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 44 (6th Cir. 1987)).

Here, the ALJ determined that Brandt had several severe impairments. [Tr. 110] She also acknowledged Brandt's carpal tunnel syndrome, chronic renal failure, and migraines, but expressly concluded that they were not severe impairments. [Tr. 111] Specifically, she stated that "these impairments span several years, have been treated symptomatically, or are mentioned as a matter of historical record, and there is not indication otherwise that any required other than conservative care with negligible effect on the ability to work." The Court will consider Brandt's arguments concerning each impairment separately.

First, Brandt contends that the RFC assigned by the ALJ did not account for her chronic renal failure, which caused her to suffer significant right-side pain. Despite the current complaint of right-side pain, however, Brandt has not identified any portion of the record in which this is documented. Instead, Dr. Sara's notes indicate that Brandt did not complain of pain and that she had no uremic symptoms. [Tr. 1090]

Brandt also claims that the ALJ failed to consider that she was forced to discontinue all of her pain medication due to her chronic renal disease. But Brandt's claim that she was required to stop all pain medicine is not supported by the record. Dr. Sara advised Brandt to avoid taking NSAIDS—he said nothing about other types of pain medications. [Tr. 1092] And while Brandt reported that she had to discontinue Neurontin, Cymbalta, and ibuprofen, the record indicates that she continued to take Norco through October 2018. [Tr. 15, 46, 1290]

The ALJ also acknowledged Brandt's bilateral carpal tunnel syndrome, but reasonably concluded that it was not a severe impairment. While Brandt complained of bilateral pain and numbness in her hands, needle electromyography revealed no evidence of active or chronic denervation. [Tr. 693] As a result, Dr. Mogilevski diagnosed only mild bilateral carpal and cubital tunnel syndrome.

Brandt's hearing testimony supports the ALJ's determination that this was not a severe impairment. When asked about carpal tunnel syndrome, Brandt advised the ALJ that it was not carpal tunnel, but tendinitis, which affected only her left hand. [Tr. 176] She explained that the condition troubled her if she was not careful about how she held her left hand when using it. Brandt advised the ALJ that, fortunately, she was right-hand dominant, indicating that the condition was not much of a problem. Additionally, Brandt does not identify any functional limitations caused by carpal tunnel syndrome beyond those included in the RFC.

Finally, Brandt argues that the ALJ erred in not finding that migraines were a severe impairment that would cause her to miss several days of work per week. Brandt testified that she experienced approximately seven migraines per month, which could last up to seven days each. [Tr. 173] However, Brandt has not identified any evidence in the record that corroborates her claim regarding the frequency and severity of migraines. The most recent

notes from Dr. Mihaylov do not mention migraines, and Brandt remained on the same medications (topiramate and lamotrigine), at nearly the same dosage levels, over a prolonged period. [Tr. 1452, 1420, 690] Brandt indicated that she would attempt to "get in to get a shot" when she experienced a severe migraine, but she has not identified any evidence indicating that she actually received injections for her migraines. [Tr. 173]

In determining whether an impairment is severe, an ALJ does not accept a claimant's unsupported subjective complaints. *Fenderson v. Comm'r of Soc. Sec.*, No. 15-cv-13219, 2016 WL 5405326, at *3 (E.D. Mich. Sept. 28, 2016). Accordingly, the plaintiff has not established that the ALJ erred in determining her severe impairments.

### B. The ALJ Did Not Err in Considering the Opinion Evidence.

Brandt contends that the ALJ erred by granting "little weight" to Dr. Mogilevski's October 2017 opinion. An ALJ must give the opinion of a treating source controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record."[1] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (alterations and internal quotation marks omitted) (quoting 20 C.F.R. § 404.1527(d)(2)). But if he or she does not give controlling authority to the opinion of a controlling source, the ALJ must give good reasons for the amount of weight given. *Id.*

Dr. Mogilevksi's medical statement includes two opinions. First, he reported that Brandt would suffer several seizures per week. [Tr. 1086] Second, he opined that Brandt was

---

[1] The "treating source rule" has been eliminated for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1527.

- 12 -

unable to work. [Tr. 1087] The ALJ gave the opinion little weight, explaining that it was inconsistent with the other evidence of record. As the ALJ noted, Brandt's seizure activity was entirely self-reported. And after three days of testing, Dr. Fakhoury (who apparently focuses his practice on epilepsy) could not determine a physical cause for Brandt's reported "spells." The ALJ also explained that Mogilevski's opinion was inconsistent with Brandt's level of function, which included shopping and driving with her grandchildren in her vehicle.

The Court also notes Mogilevski's report is so patently deficient that the Commissioner could not possibly credit it. *See id.* 547. Mogilevski did not provide any explanation or identify any treatment notes or other objective bases for his opinions. [Tr. 1086] And the ultimate question of whether a claimant is able to work is reserved for the ALJ. Accordingly, Mogilevski's opinion that Brandt could not perform any work is not entitled to any deference. *See* 20 C.F.R. § 404.1527(d).

Brandt next argues that the ALJ improperly rejected the opinion of Dustin Wygant, Ph.D. The Court notes, as an initial matter, that Alexander Kuhl, M.S. (a doctoral student) evaluated Brandt under Wygant's supervision. [Tr. 956] The ALJ gave little weight to Kuhl's opinions because he assessed limitations that were inconsistent with Brandt's limited mental health treatment and "relatively active lifestyle," which included driving and taking care of young children and her elderly mother. [Tr. 121] Additionally, Kuhl reported that testing indicated Brandt was overreporting her symptoms or problems. Kuhl's characterization of Brandt's symptom exaggeration as a "cry for help," does not remedy the questionable validity of the test results.

Unlike treating physicians, consultative examiners' opinions are not entitled to any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Instead,

such opinions should be weighed considering the factors outlined in 20 C.F.R. § 404.1527(c). In this case, the ALJ engaged in a proper analysis, noting that the severe limitations Kuhl assessed were inconsistent with the record as a whole. The ALJ also noted that Kuhl's opinions were based on a one-time examination rather than a treatment relationship. [Tr. 121] Brandt takes issue with ALJ Jackson's (apparently incorrect) assumption that her attorney paid for Kuhl's report. However, the ALJ acknowledged that the report was legitimate and deserved due consideration, providing several independent reasons for giving it little weight.

C. **The ALJ's Decision is Supported by Substantial Evidence.**

Substantial evidence supports the ALJ's decision that Brandt could perform a limited range of light work. Robert Culbertson, M.D., reviewed Brandt's file on February 25, 2016. [Tr. 215] After reviewing all of the medical evidence, he concluded that Brandt could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds. [Tr. 212] He determined that she could sit and stand and/or walk for six hours in an eight-hour workday. Culbertson found that Brandt could frequently crouch, crawl, stoop, and climb ramps, stairs, ladders, ropes, and scaffolds. [Tr. 213] He believed that her ability to reach overhead was limited by the degenerative disc disease in her cervical spine. Culbertson also concluded that she should avoid operating heavy machinery, heights, and loud noise due to migraines. [Tr. 214]

Paul Saranga, M.D., reviewed the file in May 2016, and reached conclusions similar to those reached by Culbertson. However, Saranga recommended that Brandt be limited to light work because she could occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry only 10 pounds. [Tr. 228] Like Dr. Culbertson, Saranga believed Brandt could sit and stand and/or walk for six hours in an eight-hour workday. He also agreed with Culberton's recommendations regarding posture and overhead activity. [Tr. 229]

Jane Brake, Ph.D., reviewed Brandt's file and issued a mental RFC on February 22, 2016. [Tr. 217] There was no mental health evaluation on file at that point, but Brake reviewed Brandt's other records including primary care records regarding treatment of depression. Brake concluded that Brandt had the ability to understand and recall simple, familiar work instructions and procedures. She also found that Brandt could sustain attention and persist at simple, familiar tasks requiring little or no judgment, and involving minimal variations for extended periods of two-hour segments. Finally, she opined that Brandt could interact frequently as needed with supervisors and peers and could interact frequently with the public. Christi Bruening, Ph.D. reviewed the file and provided an additional mental RFC, substantially similar to Brake's, in May 2016. [Tr. 233]

These opinions, as well the treatment notes from Brandt's medical and mental health providers, provide a substantial basis for the ALJ's RFC determination. Brandt worked as a secretary, lifting up to 20 pounds, up until her alleged onset of disability. Following her son's death, Brandt advised her counselor that she was "barely keeping it together at work," and was not able to take time off to attend to her personal needs. [Tr. 665] By August 2015, she reported that she was "actively looking" to leave her employment, but was having difficulty finding another suitable job. [Tr. 666-75]

Brandt had stopped working by August 2016, complaining mostly of migraines and neck pain. [Tr. 324] However, as the ALJ noted, clinical findings were "rather benign" and did not indicate severe limitations in Brandt's ability to perform work-related activities. And while he believed she had some limitations, Mr. Kuhl (Brandt's retained psychological examiner) believed that she could work and would benefit psychologically from doing so. [Tr. 970]

## V. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

**ORDERED** as follows:

1. Defendant Commissioner of Social Security Andrew M. Saul's Motion for Summary Judgment [Record No. 13] is **GRANTED**.

2. Plaintiff Pamela Jean Brandt's Motion for Summary Judgment [Record No. 11] is **DENIED**.

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

Dated: July 23, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge